UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 03.06.15
```

JOHN L. PETEREC,

                      Plaintiff,

-v-

CITY OF NEW YORK, *et al.*,

                      Defendants.

No. 14-cv-309 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

    Pro se Plaintiff John Peterec ("Plaintiff") brings this action against the City of New York ("City") and Police Officer Frank Menna ("Officer Menna," and collectively with the City, "Defendants") pursuant to 42 U.S.C. § 1983 for alleged deprivations of his civil rights. Now before the Court is Defendants' motion to dismiss Plaintiff's Complaint (Doc. No. 2 ("Compl.")) pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendants' motion is granted.

I. BACKGROUND

    On the evening of January 10, 2013, Plaintiff was walking through Times Square in New York City when he was stopped by Officer Menna.[1] (Compl. at 20-21.) Plaintiff was drinking a can of Arizona Green Tea that was at least partially concealed in a brown paper bag and walking toward a garbage can to pick up some trash that had he dropped on the ground. (*Id.* at 22; Resp. at 4-5.) Officer Menna stopped Plaintiff to ask what he was doing, where he was going, and what

---

[1] The facts are taken from the Complaint and assumed to be true for the purposes of this Opinion. *See, e.g., Regan v. New York State Local Ret. Sys.*, 406 F. App'x 568 (2d Cir. 2011). In ruling on Defendants' motion, the Court also considered Defendants' Memorandum of Law (Doc. No. 23 ("Mem.")), Plaintiff's Response (Doc. No. 24 ("Resp.")), Plaintiff's Memorandum in Opposition (Doc. No. 25 ("Opp.")), and Defendants' Reply Memorandum of Law (Doc. No. 29 ("Rep.")), and the declarations and exhibits attached thereto.

was in the brown paper bag. (Compl. at 22; Resp. at 5.) Plaintiff responded that he was drinking iced tea, that he was nearly finished with it, and that he was about to throw it out. (Compl. at 22-23; Resp. at 5.) Plaintiff then showed the nearly empty iced tea can to Officer Menna. (Compl. at 22; Resp. at 5.) At that moment, Officer Menna asked Plaintiff for identification and to "wait there." (Compl. at 24-25.) Several minutes later, Officer Menna returned to issue Plaintiff a summons for public consumption of alcohol in violation of New York City Administrative Code § 10-125(b) (the "open container law"). (*Id.* at 25.) Plaintiff appeared in court on March 28, 2013 in response to the summons, and the case was promptly adjourned in contemplation of dismissal. (*Id.* at 26-27.)

Plaintiff instituted this action against Defendants and the New York City Police Department on January 14, 2014 by filing his initial Complaint. On February 29, 2014, the Court dismissed Plaintiff's claims against the New York City Police Department, because it is not an entity that can be sued, and ordered service on the remaining Defendants. (Doc. No. 5.) Defendants filed their motion to dismiss on August 1, 2014, Plaintiff filed his opposition on September 8, 2014, and Defendants filed their reply on October 10, 2014.

II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). The plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a Rule 12(b)(6) motion to dismiss, a

court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns*, 493 F.3d at 98. However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a pleading that only offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.* at 570. Although the Court construes the Complaint liberally because Plaintiff is *pro se*, the Complaint must still contain factual allegations that raise a "right to relief above the speculative level" in order to survive a motion to dismiss. *Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 603 (S.D.N.Y. 2009) (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).

### III. DISCUSSION

Plaintiff brings claims against Defendants pursuant to 42 U.S.C. § 1983. Section 1983 provides a civil cause of action for damages against any person who, acting under color of state law, deprives another of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983. To prevail on a claim under § 1983, a plaintiff must show (1) the deprivation of any right, privilege, or immunity secured by the Constitution or laws (2) by a person acting under the color of state law. *See id.* "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Duamutef v. Morris,* 956 F. Supp. 1112, 1115 (S.D.N.Y. 1997) (citing *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993)).

Specifically, Plaintiff alleges claims for (1) false arrest and imprisonment, (2) malicious prosecution, (3) equal protection violations, (4) conspiracy, and (5) municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). However, for the reasons set forth

below, the Court concludes that Plaintiff has failed to state a claim for any of his asserted causes of action.

## A. False Arrest and Imprisonment

A § 1983 claim for false arrest, based on the Fourth Amendment right to be free from unreasonable seizures, "is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). To state such a claim, a plaintiff must allege that the defendant "intentionally confined [the plaintiff] without his consent and without justification." *Id.* A person is sufficiently seized to make a § 1983 claim for false arrest when he or she is detained by a police officer and told to remain in place so that the police officer can write a summons. *Amore v. Novarro*, 624 F.3d 522, 532 n.13 (2d Cir. 2010) (citing *Burg v. Gosselin*, 591 F.3d 95, 96 n.3 (2d Cir. 2010) (citing with approval *Vasquez v. Pampena*, No. 08-cv-4184 (JG), 2009 WL 1373591, at *2 (E.D.N.Y. May 18, 2009))). Justification includes probable cause to arrest, which provides "a complete defense to an action for false arrest." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994).

Probable cause exists where a police officer "ha[s] knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007). The existence of probable cause may be determined as a matter of law where there is no dispute over the pertinent facts or the officer's knowledge. *Id.* at 368-69. In reaching its determination, a court must evaluate the totality of the circumstances leading to the arrest "from the perspective of a reasonable police officer in light of his training and experience." *United States v. Delossantos*, 536 F.3d 155, 159 (2d Cir. 2008). Moreover, "a claim for false arrest turns only on whether probable cause existed to arrest a

defendant, . . . it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) (Sotomayor, J.) (citing *Devenpeck v. Alford*, 543 U.S. 146, 152-53 (2004)). The existence of probable cause defeats a claim for false arrest, even if the arrestee is ultimately found to be innocent. *Pierson v. Ray*, 386 U.S. 547, 555 (1967). Furthermore, once probable cause is established, officers have no affirmative duty "to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997). Finally, "when interpreting state statutes[,] federal courts defer to state courts' interpretation of their own statutes." *United States v. Fernandez-Antonia*, 278 F.3d 150, 162 (2d Cir. 2002). Accordingly, the Court turns to New York courts for guidance in deciding Plaintiff's false arrest and imprisonment claims.

In *People v. Bothwell*, the First Department of the New York Appellate Division considered what constitutes probable cause to arrest someone under the City's open container law. 261 A.D.2d 232 (App. Div. 1st Dep't 1999). In that case, the police officer observed a man "leaning against a wall, . . . holding in front of him a brown paper bag containing a partially concealed open green bottle with a white label on it." *Id.* at 232. The court held that the officer was not unreasonable in concluding that the man was violating the City's open container law, despite the fact that the officer did not test the contents of the drink and the bottle was in fact empty, "since the concealment of the bottle suggested that it was an alcoholic beverage and the manner in which [the man] held it in front of him while engaged in conversation suggested that the bottle was not empty." *Id.* at 234. Similarly, another court in this circuit has relied on *Bothwell* to hold that a police officer had probable cause to arrest a man for violating the City's open container law where the officer observed the man at night, in a high crime neighborhood, "walking on the sidewalk

holding a paper bag from which the top of a green glass bottle was visible," which the officer believed was a beer bottle based on the color of the glass. *United States v. McPhatter*, No. 03-cr-911 (FB), 2004 WL 350439, at *1 (E.D.N.Y. Feb. 24, 2004).

In the case at bar, Officer Menna observed Plaintiff in Times Square at night, drinking from a beverage can that was at least partially concealed in a brown paper bag, and walking toward a garbage can to pick up some trash that had dropped to the ground. In response to questioning from Officer Menna, Plaintiff stated that the can contained iced tea, that it was nearly empty, and that he was about to throw it out. Plaintiff then showed the nearly empty iced tea can to Officer Menna. However, unlike in *Bothwell* and *McPhatter*, the receptacle in question was an aluminum can that was *shown* to Officer Menna, not a bottle that remained obscured by the paper bag as the officer approached. And while it is possible that Plaintiff put alcohol into the iced tea can, there is nothing in the Complaint to suggest that Officer Menna observed anything about Plaintiff – such as stumbling, slurred speech, or the smell of alcohol – that would justify the conclusion that a reasonable officer would think that the can was filled with alcohol. Therefore, while the facts here are similar to those found in *Bothwell* and *McPhatter*, the Court cannot conclude, as a matter of law, that there was probable cause to issue Plaintiff a summons for violating the City's open container law.

Such a conclusion does not end the inquiry, however, for the City argues that Officer Menna also had probable cause to detain Plaintiff for violating New York City Administrative Code § 16-118 (the "littering law"), which states: "No person shall litter, sweep, throw or cast . . . any ashes, garbage, paper, dust or other rubbish and refuse of any kind whatsoever, in or upon any street or public place . . . ." Furthermore, violating the City's littering law is an arrestable offense if committed in the presence of a police officer. *See United States v. Herron*, 18 F. Supp.

3d 214, 221 (E.D.N.Y. 2014). Plaintiff protests that he was never issued a summons for littering (Opp. at 4-5; Resp. at 6), but as the Second Circuit made clear in *Jaegly*, the analysis turns on whether the officer had probable cause to arrest the individual in general, not whether the officer had probable cause to arrest the individual for the specific crime for which he was actually charged. *Jaegly*, 439 F. 3d at 154. Therefore, notwithstanding the fact that Officer Menna did not issue Plaintiff a summons for littering, the question is whether Officer Menna had probable cause to believe that Plaintiff had violated the City's littering law when Officer Menna detained Plaintiff.

Plaintiff asserts that "ALL refuse in my possession including the can of ice tea were properly placed in the city receptacle container," although he goes on to admit that he "dropp[ed] accidently some garbage from a bag" when he attempted "to place [it] in the cit[y's] repository." (Compl. at 10; Opp. at 5.) As the plain language of the littering law demonstrates, there is no mens rea requirement, and so Plaintiff's claims that he did not intend to litter is of no moment. Rather, as Plaintiff's own allegations make clear, he "dropp[ed] . . . some garbage" on the sidewalk in front of Officer Menna. (Compl. at 10.) Accordingly, the Court concludes that Officer Menna had probable cause to issue Plaintiff a summons for violating the City's littering law when Officer Menna stopped Plaintiff. This holding vitiates Plaintiff's false arrest and false imprisonment claims and the Court consequently dismisses them.[2]

---

[2] The Defendants also assert that Officer Menna is entitled to qualified immunity from Plaintiff's claims related to his arrest. "Qualified immunity shields government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In determining whether an officer is entitled to qualified immunity despite conducting an illegal arrest, the test is whether "([1]) it was objectively reasonable for the officer to believe that probable cause existed, or ([2]) officers of reasonable competence could disagree on whether the probable cause test was met." *Berg v. 505-23 BAR INC.*, No. 10-cv-4883 (RMB), 2012 WL 2367027, at *10 (S.D.N.Y. June 20, 2012). Accordingly, even if the Court were to conclude that Officer Menna lacked probable cause to stop Plaintiff, making the detention illegal, the Court would alternatively conclude that it was objectively reasonable for Officer Menna to believe that probable cause existed such that he would be entitled to qualified immunity.

B. Malicious Prosecution

"To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (internal quotation marks and citations omitted). Further, to establish a successful malicious prosecution claim, a plaintiff must "show some deprivation of liberty consistent with the concept of seizure." *Burg*, 591 F.3d at 97 (quoting *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995)). But "the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure," and therefore cannot be the basis of a malicious prosecution claim. *Id.* at 98.[3] Moreover, under New York law, "an adjournment in contemplation of dismissal is not considered to be a favorable termination" and so "cannot sustain [a] malicious prosecution claim based on the criminal proceeding." *Shain v. Ellison*, 273 F.3d 56, 68 (2d Cir. 2001). Finally, the "existence of probable cause to arrest is a complete defense" to claims for malicious prosecution and abuse of process. *See, e.g.*, *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003).

Plaintiff's malicious prosecution claim fails for multiple reasons. First, it is uncontested that Plaintiff was issued a "pre-arraignment, non-felony summons" that required a single court appearance and contained no additional restrictions on his liberty. (Compl. at 27.) This is insufficient to constitute a seizure and to give rise to a malicious prosecution claim under *Burg*, which consequently warrants dismissal of Plaintiff's claim. *See, e.g.*, *Mesa v. City of New York*,

---

[3] The seizure described here, for malicious prosecution purposes, is the actual appearance that an individual must make in court and any travel restrictions a court may impose on him or her. This is different from the seizure, for false arrest purposes, that takes place when a police officer orders an individual to remain in place so that the police officer can write a summons. *See Burg*, 591 F.3d at 96 n.3 (distinguishing these two types of seizures).

No. 09-cv-10464 (JPO), 2013 WL 31002, at *15 (S.D.N.Y. Jan. 3, 2013) (holding that "a warrantless summons, coupled with a court appearance," was not sufficient to establish a malicious prosecution claim). Second, as Exhibit C to the Complaint clearly states, the summons that Plaintiff received for the open container violation was disposed of by an adjournment in contemplation of dismissal, which cannot be used to satisfy the elements of a malicious prosecution claim. Accordingly, Plaintiff's malicious prosecution claim is also dismissed.

### C. Equal Protection

To make out a selective enforcement claim under the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show: "(1) [that] he was treated differently than others similarly situated and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Five Borough Bicycle Club v. City of New York*, 684 F. Supp. 2d 423, 438 (S.D.N.Y. 2010) (citing *Freedom Holdings Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004)) (internal quotations omitted); *see also LeClair v. Saunders*, 627 F.2d 606 (2d Cir. 1980). Courts have required that "the level of similarity between [the] plaintiff and the person with whom they compare themselves . . . be extremely high" in all material respects. *Id.* at 439 (quoting *Huth v. Haslun*, 628 F. Supp. 2d 425, 430 (S.D.N.Y. 2008) (internal quotations omitted)). Furthermore, to succeed on an equal protection claim, a plaintiff must show that "Defendants knew there were similarly situated individuals and consciously applied a different standard to plaintiff." *Id.* (quoting *Abel v. Morabito*, No. 04-cv-7284 (PGG), 2009 WL 321007, at *4 (S.D.N.Y. Feb. 10, 2009)). Demonstrating that plaintiff was treated differently from "similarly situated" individuals is the "*sine qua non* of a *LeClair* 'selective enforcement' violation." *Doe v. Village of Mamaroneck*, 462 F. Supp. 2d 520, 555 (S.D.N.Y. 2006).

Plaintiff argues that he can make out a "narrow" equal protection claim. He alleges that Officer Menna "held [him] to a different standard than the tourists" in Times Square because he "[is] and was a U.S. Citizen and [a] New Yorker," whereas the tourists "were [of] obviously different nationalities and religion[s] than [himself]." (Opp. at 16.) Plaintiff further alleges that Officer Menna stated that the reason he was ticketing Plaintiff was to "'make the tourists feel secure and safe'" because "'items in brown paper bags look suspect,'" despite the fact that "tourists were on slight occasions doing the same or similar." (Resp. at 6.) Construing the allegations broadly, Plaintiff seems to allege that Officer Menna selectively enforced the City's open container law against local New Yorkers and U.S. citizens but not against foreign tourists.

Plaintiff's self-described "narrow" equal protection claim is deficient on multiple grounds. First, Plaintiff does not adequately allege that tourists were similarly situated to him, as his vague reference to tourists who were "doing the same or similar" is wholly conclusory and insufficient to establish an inference of selective enforcement. Second, even assuming that Plaintiff's allegations concerning tourists with "items in brown paper bags" were sufficient to establish differential treatment for similarly situated individuals, Plaintiff has not alleged any facts to suggest that Officer Menna was motivated by impermissible considerations, such as race or religion, or by an "intent to inhibit or punish the exercise of [Plaintiff's] constitutional rights," or with "malicious or bad faith intent to injure [Plaintiff]." *Five Borough Bicycle Club*, 684 F. Supp. 2d at 438. In short, Plaintiff's assertions of discriminatory intent on the part of Officer Menna are wholly conclusory. Accordingly, Plaintiff's equal protection claim is dismissed.

D. Conspiracy

A successful § 1983 conspiracy claim must allege "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act

done in furtherance of that goal causing damages." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)). "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive plaintiff of his constitutional rights are properly dismissed." *Id.* at 325 (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)). Furthermore, because a municipality can act only through its employees, a municipality cannot conspire with its employees. *See Warren v. Westchester Cnty. Jail*, 106 F. Supp. 2d 559, 566 (S.D.N.Y. 2000). Rather, a municipality can be liable only under § 1983 for its custom, policy, or practice. *See id.*

Plaintiff cannot make out a conspiracy claim because he does not adequately allege an unconstitutional injury. The Court's prior holdings that Officer Menna had probable cause to seize Plaintiff and that Plaintiff failed to allege an equal protection claim vitiate any claim that he suffered an unconstitutional injury. Additionally, the fact that a municipality cannot conspire with its employees also bars Plaintiff's claim, since Officer Menna is an employee of the City and could not have conspired with the City, or himself.

E. *Monell* Liability

A municipal entity may be liable under § 1983 if the plaintiff's alleged constitutional violations are caused by the entity's "policy or custom." *Monell*, 436 U.S. at 694; *accord Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995). The municipality need not have an overtly unconstitutional policy. Instead, a claim may lie where a municipality has been alerted to an unconstitutional practice and displayed deliberate indifference. *See, e.g.*, *Fiacco v. City of Rensselaer*, 783 F.2d 319, 324 (2d Cir. 1986). Accordingly, to state a claim for municipal liability pursuant to § 1983, a plaintiff must plead facts supporting (1) the existence of a constitutional violation, and (2) a policy or custom giving rise to that violation that the municipality has actively

enforced or knowingly ignored. *See Irish v. City of New York*, No. 09-cv-5568 (RMB), 2010 WL 5065896, at *5 (S.D.N.Y. Dec. 6, 2010) (dismissing municipal liability claim where (1) the police defendants acted properly in arresting the plaintiff, and (2) the plaintiff pled only "speculative and conclusory allegations of an unlawful custom and practice").

Plaintiff argues that the City is subject to *Monell* liability because the "custom and policy of the New York City Police Department is one of depriving citizens of their [constitutional rights]." (Opp. at 11.) Specifically, Plaintiff invokes the class action litigation regarding the City's "stop and frisk" policy, presumably meaning *Floyd v. City of New York*, 959 F. Supp. 2d 540 (S.D.N.Y. 2013), and the pending "Schoolcraft" litigation, presumably meaning *Schoolcraft v. City of New York*, No. 10-cv-6005 (RWS), 2011 WL 1758635 (S.D.N.Y. May 6, 2011). Plaintiff alleges that these two cases "clearly . . . show a clear-cut pattern of abuse, that is unconstitutional and a policy and custom of the City of New York, that [he] fell victim to." (Opp. at 13.)

Plaintiff's references to unconnected, irrelevant litigation are patently inadequate to allege a policy or custom of the City, let alone allege that that policy or custom is the one that gave rise to Plaintiff's alleged violation. Further, because Plaintiff has failed to plead facts supporting the claim that Officer Menna's seizure was unlawful, he also fails to state an underlying constitutional violation and so cannot make out a *Monell* claim. Accordingly, the Court dismisses Plaintiff's *Monell* liability claims as well.

IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT Defendants' motion to dismiss is granted. The Clerk of the Court is respectfully directed to terminate the motion at docket entry 22 and to close this case.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

DATED:   March 4, 2015
         New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

A copy of this Order has been sent to:

John L. Peterec
244 5th Ave. Apt. J-292
New York, NY 10001